## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| In the matter of: ) <br> ) <br> **GREEN MOUNTAIN MGMT, LLC,** ) <br> ) <br> Debtor. ) <br> ——————————————————— ) | **BANKRUPTCY CASE NO:** <br> **09-03129-TBB-11** <br> ———————————————— |
| ) <br> **GREEN MOUNTAIN MANAGEMENT,** ) <br> **LLC** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **DANIEL B. COWART and** ) <br> **GEORGIA FLATTOP PARTNERS,** ) <br> **LLC** ) <br> ) <br> Defendants. ) | **ADVERSARY PROCEEDING NO.** <br> ———————————————— |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Green Mountain Management, LLC, as debtor in the above-styled Chapter 11 bankruptcy case and Plaintiff in the above-styled adversary proceeding files this Complaint for damages and injunctive relief against Daniel B. Cowart and Georgia Flattop Partners, LLC.

## PARTIES

1.      The Plaintiff, Green Mountain Management, LLC ("Green Mountain" or "GMM") is the debtor in possession in the Chapter 11 Bankruptcy Case of Green Mountain Management, LLC (Bankruptcy Case No. 09-03129-TBB-11, United States Bankruptcy Court, Northern District of Alabama) filed on May 27, 2009.  The case was filed as an involuntary

Chapter 11. An order for relief was entered June 1, 2009. Green Mountain is a Delaware limited liability company with its principal place of business in Jefferson County, Alabama.

2.      Defendant Daniel B. Cowart ("Cowart") is an individual residing in the State of Georgia.

3.      Defendant Georgia Flattop Partners, LLC ("FLATTOP" or "GFP") is a Georgia limited liability company with its principal place of business in Norcross, Georgia. Cowart is the sole member of FLATTOP.

### JURISDICTION

4.      This Court has jurisdiction over this proceeding pursuant to the provisions of 28 U.S.C. § 1334(b) and 1334(e)(1). Diversity jurisdiction also exists under 28 U.S.C. §1332 because the plaintiff is a Delaware entity with its principal place of business in Alabama, and both of the Defendants are residents of Georgia, i.e., neither is a resident of, or organized in, Delaware or Alabama, and the amount in controversy here exceeds $10,000,000, exclusive of interest, costs and attorneys fees. This Court also has supplemental jurisdiction under 28 U.S.C. §1367 over all other claims asserted herein because they are so related to the claims which are within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.      This is a core proceeding pursuant to the provisions of 28 U.S.C. § 157 (b)(2).

6.      This Court has jurisdiction to provide injunctive relief by virtue of its powers as an equity court and under 11 U.S.C. §105, among other sources of such power

7.      This proceeding is brought by Green Mountain to obtain damages incurred by Green Mountain as the proximate result and consequence of the tortious conduct of the defendants, committed both jointly and separately and severally as the events occurred, and the

2

defendants' breaches of contract and of fiduciary duty, and for injunctive relief to prevent further irreparable harm to Green Mountain.

8.      This adversary proceeding is initiated consistent with the provisions of rule 7001 of the Federal Rules of Bankruptcy Procedure.

9.      As more particularly alleged hereafter, each defendant has personally and/or by agent come into the Northern District of Alabama, including Jefferson County, Alabama, and has personally and/or by agent committed tortious acts, repeatedly communicated with persons and businesses in and from this District, and done or solicited business in this District. The Defendants have participated in the business of Green Mountain in this District, including travel to and meetings in this District, and have breached their obligations to have been performed in this District under the Operating Agreement of Green Mountain.

**ALLEGATIONS OF FACT**

10.     Green Mountain was formed to develop and operate a multi-million dollar, fifteen hundred plus acre solid waste landfill facility (the "Landfill") situated in Adamsville, Jefferson County, Alabama. Physical construction of the first cell of the Landfill is nearly complete, but it is not yet operational due to numerous disputes described hereafter.

11.     The idea of development and operation of the Landfill originated on or about January 1, 2003 when Jack H. Gray II ("Gray") and FLATTOP, a Georgia land development company controlled by Cowart agreed to jointly undertake the development of the Landfill. The gist of the agreement was that Gray was to acquire the land, obtain necessary permits and construct and operate the Landfill; FLATTOP was to provide capital financing to develop and operate the Landfill.

3

12.     Gray utilized Construction Management Services, LLC ("CMS") to perform the activities required by his agreement with FLATTOP.  Gray is and always has been the sole member of CMS.

13.     In August 2007, CMS acquired land in west Jefferson County known as "Flat Top" for the purpose of constructing the Landfill.  CMS had previously filed an application for a permit with the Alabama Department of Environmental Management ("ADEM") to construct and operate the Landfill at this site on May 4, 2005.  ADEM approved the application and issued a permit to CMS on August 6, 2007.

14.     On January 6, 2008, CMS, Green Mountain, FLATTOP and Gray entered into a written agreement (the "Definitive Agreement") relating to the structure, management and operations of Green Mountain.  The Definitive Agreement was amended on February 13, 2008 (the "Amended Definitive Agreement").

15.     Gray regularly prepared and delivered to FLATTOP spreadsheets estimating, to the extent possible, the costs and expenses required to complete construction and to timely open the Landfill.  In turn, and in the beginning, FLATTOP reimbursed Gray and Green Mountain for the expenses related to the construction of the Landfill pursuant to the Definitive Agreement.

16.     Cowart is involved in the land development business in the Atlanta, Georgia area.  Land development nationally is in a depression, and the land development business in the Atlanta area, where Cowart and his development entities operate, is in particularly severe straits.  Banks and lenders have substantially curtailed new financing related to land development.  Reflecting this general decline and his reduced ability to obtain financing, Cowart and his controlled entities have repeatedly failed to provide Green Mountain with the financing and funding promised by Cowart to be delivered through FLATTOP.  On information and belief,

4

Cowart and his businesses are under great financial strain and have had repeated trouble obtaining funding and financing since at least October 2008.

17. Cowart and FLATTOP, by means of numerous promises and representations, induced Gray to enter into the Green Mountain Operating Agreement dated October 12, 2008.

18. The Green Mountain Operating Agreement in effect at the time of Green Mountain's bankruptcy was sought by Cowart for the avowed purpose to enable FLATTOP to obtain an outside bank loan in order to fulfill his financing obligations to Green Mountain, in a structure which would use the Landfill and its real estate as collateral for the loan or loans to finance the project. Gray accommodated Cowart and FLATTOP and entered into the Green Mountain Operating Agreement, which expressly provides that the Landfill, Green Mountain's principal asset, would be made available to be mortgaged to support financing necessary to get the Landfill fully operational, free and clear of liens (except for the lien of such expected financing).

19. The Green Mountain Operating Agreement superseded and replaced all prior agreements, including the Definitive Agreement and the Amended Definitive Agreement, regarding structure, management and operations of Green Mountain. A true and correct copy of the Operating Agreement is attached hereto as **Exhibit A**.

20. The majority of the material terms of the Green Mountain Operating Agreement are the same as those under the Amended Definitive Agreement, including division of ownership, managerial responsibilities and financial obligations.

21. Pursuant to the Green Mountain Operating Agreement, Green Mountain's sole Managing Member ("Manager") is Gray, who owned 43% of the membership interests of Green Mountain and currently still owns 1%. NAMCO Waste Management of Alabama, LLC, an

5

Alabama limited liability company ("NAMCO"), purchased 42% of Gray's membership interests in Green Mountain on May 9, 2009, as hereinafter discussed.

22.     Green Mountain's remaining 57% is owned by FLATTOP, which has no management authority under the Green Mountain Operating Agreement. FLATTOP is essentially a non-operating company organized by Cowart and passive participant pursuant to the Green Mountain Operating Agreement.

23.     Pursuant to the Green Mountain Operating Agreement, FLATTOP is obligated to make or reimburse all payments owed to vendors on behalf of Green Mountain within 10 days after receipt of an invoice from Green Mountain and Gray. FLATTOP had this same obligation under the predecessor Amended Definitive Agreement.

24.     The Green Mountain Operating Agreement expressly obligated FLATTOP to purchase and Gray to sell all of Gray's equity interest in Green Mountain through annual installments in 2009, 2010 and 2011.

25.     FLATTOP failed to meet its financial obligations under the Green Mountain Operating Agreement, failures which constitute major defaults, as more particularly described hereinafter. The defaults have halted completion of construction of the Landfill and threaten both the viability of the Landfill and several lucrative agreements between Green Mountain and various prospective customers who would deposit solid waste at the Landfill if and when it is timely completed.

26.     In order to ensure that Green Mountain remains viable in the face of FLATTOP's numerous defaults and breaches of its obligations under the Green Mountain Operating Agreement, and because FLATTOP had breached its various agreements and was continuing in breach, Gray sold the majority of his membership interest in Green Mountain to NAMCO,

6

pursuant to an Equity Purchase Agreement dated May 9, 2009 ("Equity Purchase Agreement"). The Equity Purchase Agreement was executed after Gray terminated all efforts to prosecute a motion to enforce the March 26, 2009, settlement agreement between Gray and FLATTOP, which agreement has been rejected by FLATTOP and Cowart.

27. Pursuant to the Equity Purchase Agreement, NAMCO now owns 42% of Green Mountain, with Gray maintaining a 1% membership interest. Because Gray continues as a member, he remains the sole Manager of Green Mountain as is provided by the Green Mountain Operating Agreement.

28. Sonny Harwell, an officer of NAMCO, is a former resident of the State of Alabama who has conducted business in Alabama for many years. Through various entities, both in and outside of Alabama, Mr. Harwell has extensive experience in waste management and landfill projects. By contrast, Cowart has had no experience in waste management and landfill projects.

29. NAMCO is not encumbered by the financial problems which have openly plagued FLATTOP for months, and, unlike FLATTOP, is in the position to secure the financing necessary to timely complete the Green Mountain Landfill and to pay the debts, including numerous unsecured ones, some of which are the Involuntary Bankruptcy Petitioning Creditors, which FLATTOP has for so long left unpaid and which currently hinder Green Mountain's efforts to open and operate the Landfill.

### A. FLATTOP Has Defaulted on Its Financial Obligations under the Green Mountain Operating Agreement

30. On information and belief, because of the severe downturn in the Atlanta commercial land development market and financial strains on Cowart and his entities in the past year, FLATTOP has defaulted on several of its primary obligations under the Green Mountain

7

Operating Agreement. These defaults put Green Mountain's primary asset, the Landfill, in grave jeopardy of imminent foreclosure and auction at the time of the bankruptcy petition as hereinafter explained.

31.    The Green Mountain Operating Agreement obligated FLATTOP to provide funding of between $6 million and $12 million for the initial infrastructure and first cell construction for the Landfill and the Landfill operations, as more particularly described hereafter. FLATTOP breached its said obligation, and never provided such funding.

32.    The Green Mountain Operating Agreement also obligated FLATTOP to pay to Green Mountain in Alabama invoices it received from Gray which evidence amounts owed by Green Mountain to third-party creditors in Alabama within ten days of FLATTOP's receipt of said invoices, as more particularly described hereafter. FLATTOP breached its said obligation, and failed to pay an October 9, 2008 invoice from Green Mountain (submitted to FLATTOP and to Cowart) for $3,468,355.00 owed to Green Mountain vendors, which was due and payable on or before October 22, 2008, and further failed to pay $1,893,278.00 due on November 15, 2008 for other debts owed to Green Mountain vendors. An electronic communication transmitting such October 9, 2008 invoice listing the above stated amounts advised Cowart and FLATTOP that failure to pay on time would "result in serious damage to the project." Cowart himself was in possession of the October 9, 2008 invoice when he represented to Gray and Green Mountain that FLATTOP had the funds and means to meet all its obligations under the new Operating Agreement, but Cowart's representation was false. Gray and Green Mountain notified FLATTOP and Cowart that such failures to make such payments constituted defaults of the Operating Agreement's provisions.

8

33. The Green Mountain Operating Agreement further obligated FLATTOP to purchase all of Gray's equity interest in Green Mountain by way of annual installments in 2009, 2010 and 2011, with the first installment being due January 7, 2009. Thus, from and after January 7, 2009, FLATTOP was and is in breach of its obligation to pay $2,400,000 to Gray in exchange for Gray assigning 15% of his then 43% membership equity interest in Green Mountain, as more particularly described hereafter.

34. FLATTOP has breached and defaulted upon each and all of the above stated financial obligations, and, among other consequences, has forfeited its rights to purchase any membership interests in Green Mountain, and has incurred a debt owed by it to Green Mountain in excess of $5,350,000.

### B. FLATTOP's Has Defaulted Upon its Obligation to Provide Initial Funding

35. FLATTOP has breached the Green Mountain Operating Agreement by defaulting upon its obligation to provide cash to the extent necessary for the initial infrastructure and first cell construction for the Landfill and the Landfill operations.

36. FLATTOP in Exhibit C to the Green Mountain Operating Agreement and in Sections 1.4(a) and 1.4.1, promised to provide from $6 million and $12 million in funding to Green Mountain, through a loan from Park Avenue Bank in Georgia. FLATTOP was not candid and forthright on a timely basis with Gray or CMS about its situation with Park Avenue Bank, or about that Bank's own financial issues and problems, and about its inability to obtain such financing from Park Avenue Bank, but Cowart and FLATTOP concealed, and did not promptly advise Gray or CMS of, those facts. Further, FLATTOP shopped its loan request around to a number of commercial and investment banks which, on information and belief, have all rejected the financing sought by Cowart and FLATTOP for Green Mountain.

9

37.     As a result of FLATTOP's failure to provide the requisite funding under the Green Mountain Operating Agreement, the Landfill stands incomplete, unfunded, and (but for the automatic stay in bankruptcy at the present time) in danger of being sold off at auction to pay for more than $4 million in liens filed by contractors (the mechanics and materialmen lien claimants). As a result, Green Mountain lost a lucrative contract and is in danger of losing or failing to obtain in the first instance, other lucrative contracts.

### C.     FLATTOP's Has Defaulted Upon its Obligation to Timely Pay Invoices

38.     FLATTOP has breached the Green Mountain Operating Agreement by defaulting upon its obligation to pay within 10 days invoices received from Gray which evidence amounts owed by Green Mountain.

39.     On October 9, 2008, three days before entering the Green Mountain Operating Agreement, Gray, on behalf of Green Mountain, submitted to FLATTOP two invoices from Green Mountain vendors: one invoice for $3,468,355 due on or before October 22, 2008; the second invoice for $1,893,278.00 was due on or before November 15, 2008. Gray informed FLATTOP at that time that failure to pay the two invoices in a timely manner would result in serious damage to the project.

40.     Prior to causing FLATTOP to enter into the Green Mountain Operating Agreement, Cowart affirmatively represented to Gray that FLATTOP could meet its obligations to provide funding and pay invoices under the Green Mountain Operating Agreement. Cowart had possession of the two invoice amounts referenced above when he made this representation to Gray.

10

41.     Although none of the materialmen or mechanic lien creditors are as yet secured with perfected liens against Green Mountain, no less than six Alabama state court actions were pending by such creditors at the time the involuntary bankruptcy petition was filed.

42.     Nevertheless, on October 22, 2008 – 10 days after Cowart entered into the Green Mountain Operating Agreement on behalf of FLATTOP – FLATTOP failed to pay the amount specified in the invoice as being due and payable on that date.

43.     Again, on November 15, 2008, FLATTOP failed to pay the amount specified in the invoice as being due and payable on that date.

44.     Gray and Green Mountain have made repeated demands on FLATTOP to make the required payments to the unsecured creditors for the invoices due October 22, 2008 and November 15, 2008, but, to date, FLATTOP has failed to pay the invoiced amounts.

45.     Gray, on behalf of Green Mountain, notified FLATTOP that its failure to timely make these payments – or, indeed, make them at all – constituted a default under the Green Mountain Operating Agreement.

46.     FLATTOP's inability to make its contractually-required payments and permit Green Mountain to pay its debts has imperiled Green Mountain's ability to finish construction and open the Landfill for which it was formed. FLATTOP's failure to make payments required of it under the Green Mountain Operating Agreement has already delayed the timely opening of the Landfill, which jeopardizes certain of Green Mountain's service agreements with potential customers of the Landfill. At least one major customer has terminated its contract and pulled out entirely.

47.     Because of FLATTOP's inability to make its contractually required payments, Gray was required to take certain actions that he otherwise would not have taken. Gray has

11

loaned the company over $500,000 of his own money to pay creditors as a result of FLATTOP's breach. This was despite the fact that it was FLATTOP's and not Gray's explicit obligation to do so.

### D. FLATTOP Has Defaulted Upon its Obligation to Make Installment Payments to Gray

48. FLATTOP has also breached the Green Mountain Operating Agreement by defaulting upon its obligation to purchase all of Gray's equity interest in Green Mountain by way of annual installments in 2009, 2010 and 2011.

49. Pursuant to Section 1.2.1(a) of the Green Mountain Operating Agreement, on January 7, 2009, FLATTOP was obligated to pay Gray the sum of $2,400,000, upon which payment Gray would be obligated to transfer and assign to FLATTOP a 15% membership interest in Green Mountain, which would thereby reduce Gray's membership interest in Green Mountain to 28%.

50. On January 7, 2009, FLATTOP failed pay Gray the first installment of $2,400,000 as required pursuant to Section 1.2.1(a) of the Green Mountain Operating Agreement. FLATTOP's failure to tender its first installment payment to Gray on January 7, 2009, constitutes a default of the Green Mountain Operating Agreement.

51. Pursuant to the Green Mountain Operating Agreement, on January 9, 2009, Gray provided notice to FLATTOP of its default under that agreement. In this letter, Gray informed FLATTOP that it was in default of its obligations pursuant to Section 1.2.1 of the Green Mountain Operating Agreement. Gray further gave notice to FLATTOP that pursuant to Section 1.2.2 of the Green Mountain Operating Agreement he intended to sell his 15% interest in Green Mountain to a third party if he did not receive payment in full of the purchase price set forth in Section 1.2.1 by March 9, 2009.

Case 09-00123-TBB    Doc 1    Filed 06/09/09    Entered 06/09/09 12:08:26    Desc Main
Document    Page 12 of 32

52. On March 9, 2009, the 60 day cure period pursuant to Section 1.2.2 of the Green Mountain Operating Agreement ended, and FLATTOP failed to cure the default under Section 1.2.1(a).

53. On information and belief, recognizing that FLATTOP could not possibly comply with either the (a) loan financing required by Section 1.4 of the Green Mountain Operating Agreement or (b) the vendor payment invoices which were long overdue or (c) the obligations under Section 1.2.1, Cowart caused FLATTOP to file suit against Gray, as a delaying tactic, to try and buy some time to raise financing, and to try and shift the attention and blame away from Cowart for his misrepresentations and deception, and his and FLATTOP's performance failures and Operating Agreement breaches.

### E.    FLATTOP is unable to secure necessary financing

54. Pursuant to the Green Mountain Operating Agreement, Park Avenue Bank is the bank issuing the loan commitment thereunder. PAB Bankshares, Inc. is the holding corporation of Park Avenue Bank. Park Avenue Bank is a small community bank that has large exposure to land development loans (e.g., Cowart's and FLATTOP's types loans), especially in the North Georgia (Atlanta) area. That sector of business, in that geographic area, has been particularly hard hit by the recession. Park Avenue Bank also has exposure to the Florida real estate market, another area hard hit by the recession.

55. Upon information and belief, Park Avenue Bank is not in a financial position to provide Cowart and FLATTOP with the substantial funds needed to purchase Gray's equity, to satisfy the debts of Green Mountain, and to get the Landfill operational. Pursuant to the Form 10-K dated March 31, 2009 for the fiscal year ended December 31, 2008, of Park Avenue Bank's holding company, PAB Bankshares, Inc., and the amended 10-K/A of PAB, and its 10-Q filed

13

May 11, 2009, 1st quarter of 2009, PAB is losing money and is having to raise capital in a private placement.

56.     Further, the Park Avenue Bank commitment, attached to the Green Mountain Operating Agreement as Exhibit C, requires a clean title for its mortgage.  With the lien suits against Green Mountain, FLATTOP would have to come up with millions of dollars independently of Park Avenue Bank, to clear title, so as to close a financing with Park Avenue Bank.

57.     Upon information and belief, the real reason for Cowart and FLATTOP raising disputes in the Delaware Chancery Case (referred to hereinafter) with Gray since March 26, 2009 over $530,000 is the continuing inability of Cowart and FLATTOP to come up with financing to both buy out Gray's interest in Green Mountain and provide bridge financing to pay off liens and otherwise meet the requirements of the Green Mountain Operating Agreement.

58.     Upon information and belief, PAB Bankshares, Inc.'s current financial condition, together with Cowart's line of business and his financial situation generally, has prevented FLATTOP from following through with its financing obligations to Green Mountain and Gray.

59.     Upon information and belief, FLATTOP is still unable to secure necessary financing despite having sought financing from several other financial institutions specializing in waste disposal loan transactions.  On information and belief, national financing entities such as Comerica Bank and Morgan Joseph, as well as regional and community banks such as Synovus Financial and ServisFirst Bank, have all turned down loan requests by FLATTOP and Cowart.

14

**F.    Green Mountain is in Jeopardy as a Result of FLATTOP's Defaults and Inability to Secure Financing**

60.    As a result of FLATTOP's failure to meet its financial obligations under the Green Mountain Operating Agreement, Green Mountain has, in turn, been unable to meet its financial obligations and is now in severe financial jeopardy.

61.    As of the filing of this Complaint, there are no fewer than six separate lawsuits against Green Mountain alleging Green Mountain's failure to pay over $4.2 million in construction and other related expenses. Such suits were by creditors who asserted contractor's liens or mechanics and materialmen's liens. Green Mountain avers that under Alabama law, such creditors, while technically unsecured creditors at the time of this petition, could become secured creditors by continued prosecution of such lien suits to the point of obtaining judgments confirming the liens and the amounts owed. These lawsuits include:

1    *C.S. Beatty Construction, Inc. v. Green Mountain Management, LLC* (Circuit Court of Jefferson County, Alabama CV-2009-900657) for $2,089,491.05 related to construction services on the Landfill .

2    *Dexter Fortson Associates, Inc. v. Green Mountain Management, LLC* (Circuit Court of Jefferson County, Alabama CV-2009-900815) for $438,110.74 related to construction services on the Landfill .

3    *Dunn Construction Company, Inc. v. Green Mountain Management, LLC and C.S. Beatty Construction, Inc.* (Circuit Court of Jefferson County, Alabama CV-2009-901242) for $11,423.23 related to construction services on the Landfill project.

15

4  *Plastic Fusion Fabricators, Inc. v. Green Mountain Management, LLC* (Circuit Court of Jefferson County, Alabama CV-2009-900407) for $483,869.19 related to construction services on the Landfill .

5  *Rives Construction Company, Inc. v. Green Mountain Management, LLC* (Circuit Court of Jefferson County, Alabama CV-2009-900679) for $503,283.00 related to construction services on the Landfill .

6  *Tractor & Equipment Company v. Green Mountain Management, LLC and John H. Gray, II* (Circuit Court of Jefferson County, Alabama CV-2009-01229) for $701,308.40 related to the purchase of a Landfill compactor.

62.    Under Alabama law, the creditors above listed can also seek interest and various costs on collection of such amounts.

63.    The urgency of addressing the lien suits was critical at the time of the bankruptcy petition, as the lien holder plaintiffs had started seeking judgments upon dispositive motions. Green Mountain had little effective defense against these suits under the circumstances, due to the untenable position Green Mountain found itself by reason of Cowart's misrepresentations and concealments and FLATTOP's defaults above described.  Upon entry of judgment(s), the lien creditors would then possess fully secured, perfected liens against the assets of Green Mountain, including the real estate at which the Landfill is located.

64.    For example, on May 11, 2009, C.S. Beatty Construction Co., Inc. filed a motion for summary judgment in its lien suit against Green Mountain in Jefferson County Circuit Court. If any one of these plaintiffs successfully obtains liens and judgments against Green Mountain, they may be able to secure title to the property or to levy execution on judgments and force a courthouse auction of the Landfill, which is Green Mountain's principal asset.

65.    On May 27, 2009, several unsecured creditors of Green Mountain – Con-Site Services, Dexter Fortson Associates and Tuscaloosa Testing Laboratories – filed an Involuntary Bankruptcy Petition against Green Mountain in this Court.  On May 29, 2009, Green Mountain filed its Answer to the Involuntary Bankruptcy Petition.  On June 1, 2009, this Court entered an Order granting relief under Chapter 11 and ordered the filing of schedules.

### G.    FLATTOP's Lawsuit Against Gray and Green Mountain

66.    Instead of fulfilling its financial obligations under the Green Mountain Operating Agreement, as a delay and blame-shifting tactic, on January 9, 2009, FLATTOP filed a lawsuit against Gray and on behalf of Green Mountain in the Delaware Court of Chancery, demanding access from Gray to Green Mountain's books and records.  Such case ("Delaware Chancery Case") is styled *Georgia Flattop Partners, Plaintiff, v. John H. Gray, II, Defendant, and Green Mountain Management, LLC, Nominal Defendant*, C.A. No. 4277-VCS.

67.    Though Green Mountain and Gray provided this access, and FLATTOP's accountant inspected all of Green Mountain's books and records, FLATTOP has still failed to meet its financial obligations under the Green Mountain Operating Agreement.

68.    As a further delay and blame-shifting tactic, on March 11, 2009, FLATTOP amended its complaint in the Delaware Chancery Case to allege, among other things, "corporate waste" for Gray's purchase of items such as a bookcase and two chairs for the Green Mountain office and ten trees for the Landfill landscaping.  The amended complaint in such Delaware Chancery Case was styled and brought as a derivative suit and sought derivative relief on behalf of Green Mountain, and made it clear that Green Mountain was named only nominally as a "defendant."  But the plaintiff bringing such action, FLATTOP, was itself guilty of unclean hands, of failing to do equity, and of major breaches of its own obligations to Green Mountain,

17

and thus FLATTOP was not (and is not) an adequate representative of Green Mountain's interests.

69. Such Delaware Chancery Case is now "property of the estate" of Green Mountain.

**H.    NAMCO's Purchase of Gray's Ownership Interest in Green Mountain**

70. On May 9, 2009, NAMCO and Gray entered into an Equity Purchase Agreement, pursuant to which NAMCO purchased all but one percent (1%) of Gray's forty-three percent (43%) membership interest in Green Mountain.

71. Gray, as sole Manager of Green Mountain, determined that entering the Equity Purchase Agreement was for the benefit of both Gray and Green Mountain for the following reasons:

    a.    FLATTOP defaulted on three obligations under the Green Mountain Operating Agreement and had failed to cure those defaults within 60 days, as discussed hereinabove.

    b.    Pursuant to Section 1.2.2 of the Green Mountain Operating Agreement, upon FLATTOP's failure to cure a default under Section 1.2.1 thereof, Gray had the right to sell his interest in the Green Mountain to a third party.

    c.    FLATTOP has demonstrated its unwillingness and inability to cure defaults.

    d.    FLATTOP (despite being unworthy of adequately representing Green Mountain's interests due to its many major breaches described hereinabove) has filed a lawsuit against Gray in Delaware Chancery

18

Court, to shift blame and attention from itself, and to try and justify delay in making payments which were necessary to complete the project.

e.    FLATTOP's inability to make its contractually-required payments has imperiled Green Mountain's ability to pay its debts and to finish construction and open the Landfill for which it was formed. It has also delayed the timely opening of the Landfill which jeopardizes certain of Green Mountain's service agreements with potential customers of the Landfill.

f.    Green Mountain has lost an important contract with Waste Management, Inc. ("Waste Management") that would have produced a steady stream of income to Green Mountain.

g.    NAMCO satisfied Gray that it has the ability to secure the financing necessary to ensure timely completion of the Landfill and Green Mountain's ability to honor and keep the service agreements with potential Landfill customers, as well as its commitments to Gray.

72.    As a result of the Equity Purchase Agreement, NAMCO now already owns a 42% membership interest in Green Mountain, Gray owns a 1% membership interest in Green Mountain and FLATTOP will continue to own a 57% membership interest in Green Mountain.

73.    FLATTOP's 57% ownership interest in Green Mountain was not diminished by the Equity Purchase Agreement.

74.    As a result of the Equity Purchase Agreement, Gray will continue as Manager of Green Mountain and, pursuant to Section 1.3(h) of the Green Mountain Operating Agreement, prior to bankruptcy, Gray appointed Harwell as President of Green Mountain, with all requisite

19

rights, authority and duties of the Manager according to the Green Mountain Operating Agreement, in order to manage and operate the Company as such person would have if acting on behalf of a Delaware corporation

75.     Upon information and belief, Cowart, his Atlanta land development companies, and FLATTOP, are in severe financial straits, and this has been the cause of FLATTOP's defaults all along.

76.     Upon information and belief, Cowart and FLATTOP intended, but have not disclosed their plans, to take Green Mountain through bankruptcy. In fact, in early March, 2009, Cowart and FLATTOP sought Gray's consent to having Green Mountain make a voluntary Chapter 11 bankruptcy filing.

77.     The relief requested in this Complaint is necessary to prevent disaster for Green Mountain, and to allow Green Mountain's management and debtor in possession (DIP) lenders to utilize financing that is being lined up, and dispose of or settle the lien suits, purchase equipment, complete the licensure process and obtain other approvals, get the Landfill into operation, and salvage valuable customer commitments before they are lost.

78.     This lawsuit does not seek to take away FLATTOP's 57% membership interest, but rather does seek to have FLATTOP's delay tactics stopped and removed as an impediment to salvaging the Landfill.

### I.     Cowart's and FLATTOP's Continued Interference

79.     Upon information and belief, Cowart and/or his agent Jeff Claunch has been interfering with Green Mountain's prospective business relationship with Waste Management.

80.     On or about May 15, 2009, Green Mountain through its Manager, Gray, entered into an agreement in principle for amendment to an existing agreement with Waste Management, one of the nation's leading waste removal companies, to bring waste to the Landfill, providing an

Case 09-00123-TBB    Doc 1    Filed 06/09/09    Entered 06/09/09 12:08:26    Desc Main
Document    Page 20 of 32

extension. Waste Management, which in July 2008 signed a contract to use Green Mountain's facility when its construction was completed, was to be one of Green Mountain's largest customers once the Landfill was completed.

81. On information and belief, during the last two weeks of May, 2009, Cowart, personally and through his agents, contacted Waste Management to disparage Green Mountain's management (including NAMCO's officer and Green Mountain's president, Sonny Harwell) and to interfere with Green Mountain's prospective business relation with Green Management.

82. In late May, 2009, Waste Management informed Green Mountain (through Gray) that it would no longer agree to use the Landfill due to the uncertainty of its complete date, and as a result of the deliberate interference of Cowart, who directly and indirectly was in communications with Waste Management during May 2009.

83. Cowart has also interfered with Green Mountain's business relations with Lexon Insurance, the company which is to provide the bonding necessary for the completion and post-completion construction of the Landfill. Cowart has contacted Lexon in an effort to cause Lexon to not secure the closing/post-closing surety bond for the Landfill (which consists of approximately an $850,000 initial deposit into a trust fund or a $500,000 cash or $500,000 letter of credit). Lexon has now raised concerns to Green Mountain about the Landfill project.

84. Additionally, without any authority to do so, Cowart has purportedly attempted to hire and/or hold out Jeff Claunch as Green Mountain's Manager, contrary to the explicit provisions of the Operating Agreement as hereinabove detailed. Cowart has been using Jeff Claunch to contact creditors of Green Mountain and other persons having dealings with Green Mountain.

21

85.    Cowart has personally been traveling around Alabama in attempts to visit the bankruptcy petitioners, Con-Site Services, Dexter Fortson Associates and Tuscaloosa Testing Laboratories. Not having any authority to negotiate with these business, Cowart is acting beyond his authority and is damaging Green Mountain.

86.    Lastly, upon information and belief, Cowart has been attempting to market Green Mountain for sale and continues to interfere with Green Mountain's securing on necessary financing to complete the Landfill.

## COUNT I
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (against Cowart)

**87.**    Green Mountain realleges the preceding paragraphs as set forth above and incorporates them herein by reference.

**88.**    Green Mountain had current, actual and prospective business and contractual relations with Waste Management. Cowart knew of Green Mountain's business relations with Waste Management, including Waste Management's plans to become a customer of Green Mountain upon completion of the Landfill. Cowart without any justification whatsoever, intentionally and maliciously interfered with such relations by inducing and/or preventing Waste Management from conducting business with Green Mountain.

89.    As demonstrated in the Factual Background section of the Complaint, such inducements were a part of a deliberate plan of Cowart to thwart Green Mountain's operations for the purpose of gaining leverage in the control of Green Mountain. As such, Cowart and Green Mountain have wrongfully interfered with Green Mountain's contractual and business relationship with Waste Management.

22

90.     Cowart's improper contacts with Lexon Insurance also amount to interference because the necessary bonding for the completion and post-completion construction of the Landfill is threatened.

91.     Cowart's purported hiring of Jeff Claunch as Manager of Green Mountain and holding him out to others as a manger, constitutes interference with Green Mountain's contractual relations with Jack Gray as Cowart has no authority to hire Jeff Claunch.

92.     In all of such actions, Cowart acted with wrongful intention and malice and wantonness, and with a deliberate aim to harm Green Mountain because it was then taking steps to get into operation under the management of Gray and Harwell, as Manager and officer, respectively.   Cowart has intentionally and willfully disparaged both Gray and Harwell to persons doing business or having relations with Green Mountain, and on information and belief has combined such disparagement with misrepresentations and suppressions of material fact to such persons, about his own misconduct and FLATTOP's breaches in connection with Green Mountain.

93.     WHEREFORE, as a direct and proximate result of the tortious interference with Waste Management and Lexon, Green Mountain was damaged in such amounts as shall be established at trial, but far greater than $1,000,000.  Further, Cowart and those acting in concert or in conspiracy with him (including Jeff Claunch) should be enjoined from continuing, or perpetrating additional, acts of interference.

COUNT II
**BREACH OF CONTRACT**
(against FLATTOP)

**94.**     Green Mountain realleges the preceding paragraphs as set forth above and incorporates them herein by reference.

95. By reason of the conduct and transactions set out herein, FLATTOP has materially breached its contractual obligations under the Green Mountain Operating Agreement with Green Mountain and the duty of good faith and fair dealing implied in all contracts.

96. FLATTOP breached and defaulted on the Green Mountain Operating Agreement by failing to purchase all of Gray's equity interest in Green Mountain by way of annual installments in 2009, 2010 and 2011, with the first installment being due on January 7, 2009.

97. FLATTOP has breached the Green Mountain Operating Agreement by defaulting upon its obligation to provide funding for the initial infrastructure and first cell construction for the Landfill and the Landfill operations as set forth in Exhibit C to the Green Mountain Operating Agreement and in Sections 1.4(a) and 1.4.1.

98. FLATTOP has breached the Green Mountain Operating Agreement by defaulting upon its obligation to pay vendor invoices received from Gray which evidence amounts owed by Green Mountain within 10 days of receipt.

99. FLATTOP has breached and defaulted upon each and all of the above stated financial obligations.

100. As a result of FLATTOP's failure to pay vendor invoices under its contractual obligations, multiple creditors have filed lien suits against Green Mountain and three such creditors placed Green Mountain into involuntary bankruptcy.

101. As a result of FLATTOP's failure to provide the requisite financing under the Green Mountain Operating Agreement, the Landfill stands incomplete, unfunded, and in danger of being sold off at auction. Green Mountain has been placed in danger of losing lucrative customer use contractual commitments and customer opportunities, among other immediate and pressing problems.

24

102.     WHEREFORE, Green Mountain seeks all direct and consequential damages as shall be shown by proof at trial (but exceeding $10,000,000), costs, expenses and any other relief it is entitled under these circumstances for FLATTOP's breach of contractual obligations. Further, Green Mountain prays for a judgment of set-off and recoupment against any and all amounts (including any alleged $10 million "loan" of FLATTOP to Green Mountain and any alleged damages of FLATTOP), at a minimum, for all amounts claimed by FLATTOP of Green Mountain or its management.

### COUNT III
### BREACH OF FIDUCIARY DUTIES OF
### LOYALTY, OBEDIENCE AND REASONABLE CARE
**(against Cowart)**

103.     Green Mountain realleges the preceding paragraphs as set forth above and incorporates them herein by reference.

104.     Cowart, who is indirectly a 57% owner of Green Mountain through FLATTOP, and who has controlled and dictated FLATTOP's actions and omissions to act in relation to the Operating Agreement, owes fiduciary duties of undivided loyalty, obedience and reasonable care to Green Mountain, as its de facto majority owner.

105.     Cowart acted improperly in his own self-interest and adversely to Green Mountain by interfering with Green Mountain's business relationship with Waste Management and Lexon.

106.     Cowart acted improperly, without authority and in his own self-interest and adversely to Green Mountain by purporting to hire Jeff Claunch as manager of Green Mountain when Jack Gray is the only authorized Manager of Green Mountain.

107.     Cowart and his company, FLATTOP, failed to obey the reasonable directions of Green Mountain's management.

25

108. Cowart failed to use reasonable care in managing the relationship of FLATTOP, his controlled entity, with Green Mountain, which has caused damage to Green Mountain.

109. Cowart breached his fiduciary duty owned to Green Mountain and caused further interference with Green Mountain, including impairing its title and preventing Green Mountain from obtaining outside financing, by willfully but improperly filing a $10 million *Lis Pendens* notice in early March 2009, a copy of which *Lis Pendens* notice is attached hereto as Exhibit B. Such *Lis Pendens* filing in the probate office of Jefferson County, Alabama, at Cowart's direction, constitutes the tort of slander of title, as to Green Mountain's property, as well as interference with prospective business relations, among other wrongs.

110. As a direct and proximate cause of the numerous breaches of fiduciary duties of loyalty, obedience and care to the company by Cowart, Green Mountain has been damaged in its business and property in such amounts as shall be established at trial, but greater than $10,000,000.00. The conduct of Cowart was attended by such malicious, intentional, willful, reckless, wanton and/or outrageous conduct that an award of exemplary damages is necessary and appropriate to punish Cowart and FLATTOP for such conduct and to make an example of them and to deter repetitions of such conduct. Thus, Green Mountain is entitled to punitive damages under the facts of this case.

## COUNT IV
## DECLARATORY JUDGMENT
### (against FLATTOP)

111. Green Mountain realleges the preceding paragraphs as set forth above and incorporates them herein by reference.

26

112. FLATTOP has claimed to Green Mountain that it has made a $10,121,594 loan to Green Mountain. Green Mountain disputes that such amount has been provided, and disputes that whatever amounts were provided were done so as a "loan."

113. Green Mountain seeks a declaratory judgment that the $10,121,594 allegedly provided to Green Mountain is, under all the facts and circumstances, an equity interest due to be treated as a contribution to capital, or alternatively, an order determining that FLATTOP'S purported loan of $10,121,594 is and shall be equitably subordinated to the rights and payment of all other claims against Green Mountain which are determined by this Court to be due and owing other creditors or other equity holders in Green Mountain's bankruptcy case.

114. Green Mountain further seeks a declaration by this Court that FLATTOP's claim asserted thru a *Lis Pendens* filing for $10,121,594 as a loan be expunged, invalidated and cleansed from the title of Green Mountain's property, and Green Mountain seeks an Order of the Court invalidating the *Lis Pendens* notice or alternatively requiring FLATTOP to withdraw the *Lis Pendens* notice or record a document in the Jefferson County Probate Office which effectuates a satisfaction, withdrawal and/or cancellation of such *Lis Pendens* notice. Green Mountain also prays for damages, including punitive damages, for the wrongful filing of the *Lis Pendens* notice.

## COUNT V
## INJUNCTIVE RELIEF
### (against Cowart and FLATTOP)

115. Green Mountain realleges the preceding paragraphs as set forth above and incorporates them herein by reference.

116. Green Mountain respectfully prays for this Court to set this matter for a hearing, on an expedited basis, at the earliest date available, for a preliminary injunction. Specifically,

Case 09-00123-TBB    Doc 1    Filed 06/09/09    Entered 06/09/09 12:08:26    Desc Main
Document      Page 27 of 32

Green Mountain seeks a preliminary injunction, mandating that Cowart and FLATTOP, and all those who are or have been acting in concert or in conspiracy with them (including, without limitation, Jeff Claunch), be enjoined and restrained from:

a) hiring or presenting Jeff Claunch as manager of Green Mountain or holding Claunch out as having any managerial authority over Green Mountain;

b) interfering with Green Mountain's efforts to finance the completion and opening of the Landfill;

c) failing to withdraw, satisfy or cancel the *Lis Pendens* notice;

d) directly or indirectly contacting any creditors or Green Mountain or otherwise interfering with Green Mountain's relationship with its creditors;

e) directly or indirectly contacting any customers or prospective customers of Green Mountain or otherwise interfering with Green Mountain's relationships with its prospective customers;

f) directly or indirectly contacting any bonding or insurance companies of Green Mountain or otherwise interfering with Green Mountain's prospective relationship with bonding and insurance companies;

g) marketing or attempting to market Green Mountain's Landfill for sale; and

h) interfering or attempting to interfere with any management or financing operations of Green Mountain.

Case 09-00123-TBB    Doc 1    Filed 06/09/09    Entered 06/09/09 12:08:26    Desc Main
Document      Page 28 of 32

117.     Green Mountain does not have an adequate remedy at law.  FLATTOP is believed to be without funds or liquid assets, and therefore unable to respond in damages.  Cowart is also believed to be incapable of paying a judgment in damages for the amounts Green Mountain is claiming herein.  Further, the Landfill property, and its licensing and authority granted by the City of Adamsville and the State of Alabama, are all unique, and irreplaceable, and their loss to Green Mountain cannot be compensated at law.  Further, public policy demands the intervention of equity in these circumstances.

118.     Green Mountain further prays that, following the issuance of the above requested preliminary injunction, this Court shall enter a "permanent injunction" providing the same relief requested above, with Green Mountain obtaining the full benefit of its actual and prospective contractual rights.

## RELIEF REQUESTED

WHEREFORE, premises considered, Green Mountain prays for relief and judgment against Cowart and FLATTOP, jointly and severally, as follows:

> A.     Under all claims, for damages suffered or incurred by Green Mountain by reason of the actions and omissions to act of FLATTOP and/or Cowart, as the case may be, according to proof at trial, but not less than $10 million, plus 6% per annum simple interest thereon from the time or times of FLATTOP's breaches and defaults under the Operating Agreement, and as to tortious conduct, from the dates of such misconduct, to the date of judgment, and for the punitive or exemplary damages above described, according to proof at trial.

29

B.     For a preliminary injunction and a permanent injunction, against Cowart and FLATTOP, and all those who are in concert or conspiracy with them, awarding the relief sought in Count V above.

C.     For an order of this Court requiring FLATTOP and Cowart to make an accounting of any and all acts they have taken with respect to Green Mountain, any creditors and vendors and contractors of Green Mountain, any prospective customers of Green Mountain, and any actual or prospective suppliers of goods, services or financing to Green Mountain.

D.     For an order and judgment granting set-off and recoupment in favor of Green Mountain and against FLATTOP, and/or Cowart, as their interests may appear, as to any amounts (including any purported "loan" amounts or any damages) sought herein or otherwise in any forum or any manner by FLATTOP or Cowart.

E.     For an order and judgment invaliding the *Lis Pendens* notice or otherwise proving Green Mountain with a clear title to its real estate, free and clear of such *Lis Pendens* notice and any claims of Cowart or FLATTOP.

F.     For an order and judgment determining that there is no valid or enforceable "loan" to Green Mountain by FLATTOP, and determining that all interests of FLATTOP, however labeled or denominated, are to be subordinated in right of repayment, distributions and other emoluments of ownership, to the repayment of all debts that may be owed by Green Mountain to pre-bankruptcy and post-bankruptcy lenders and creditors.

G.      For an Order and a judgment determining that the management and control of the bankruptcy debtor, Green Mountain, is now, and since initiation of the bankruptcy case has been, vested in John Gray as Manager and Sonny Harwell as President, with the powers of those positions as set out in the Operating Agreement and in Gray's appointment of Harwell as President, and further determining that FLATTOP, Cowart and any purported third party hired or engaged by them, have no role as Manager or officer in the management of Green Mountain.

H.      Taxing, jointly and severally, all costs of this action, and all fees and costs of any expert, and all discovery and deposition costs and expenses, and other costs of this litigation, as costs of this action.

I.      Granting such other and further relief, including, without limitation, injunctive relief, declaratory relief, specific performance relief, reasonable attorneys' fees and other forms of relief, as may be just, premises considered.

31

Green Mountain reserves the right, independently of this adversary proceeding and complaint, to determine that the Delaware Chancery Case, now property of the estate of Green Mountain, should be discontinued in any or all respects, or otherwise amended.

Respectfully submitted this 9th day of June, 2009.

/s/ Charles R. Johanson, III
Charles R. Johanson, III
Attorney for Green Mountain Management, LLC

**OF COUNSEL:**
**ENGEL, HAIRSTON & JOHANSON, P.C.**
P.O. Box 11405
Birmingham, AL
(205) 328-4600

**SERVE DEFENDANT'S AT:**

Georgia Flattop Partners, LLC
Attn: Daniel B. Cowart
3740 Davinci Court, Ste 460
Norcross, GA  30092

Daniel B. Cowart
3740 Davinci Court, Ste 460
Norcross, GA  30092

Case 09-00123-TBB    Doc 1    Filed 06/09/09    Entered 06/09/09 12:08:26    Desc Main
Document    Page 32 of 32